UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
CRYE PRECISION LLC and LINEWEIGHT      :
LLC,                                   :
                                       :
                   Plaintiffs,         :         15cv1681 (DLC)
                                       :
         -v-                           :         OPINION & ORDER
                                       :
DURO TEXTILES, LLC,                    :
                                       :
                   Defendant.          :
                                       :
-------------------------------------- X

APPEARANCES

For plaintiffs:

Robert A. Horowitz
Lauren B. Grassotti
Justin A. MacLean
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166

Michael J. Schaengold
Paul F. McQuade
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

For defendant:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190

Erin M. Estevez
COOLEY LLP
1299 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004

Celia Goldwag Barenholtz
COOLEY LLP
1114 Avenue of the Americas
New York, NY 10036

DENISE COTE, District Judge:

This lawsuit arises from a dispute between a licensor of a patented camouflage pattern and its former licensee. The pleadings include the licensor's claims for breach of contract and counterclaims seeking a declaration that plaintiffs' patents in the camouflage pattern are invalid.

This Opinion addresses two pending motions. On April 3, 2015, plaintiffs Crye Precision LLC ("Crye Precision") and Lineweight LLC ("Lineweight") (collectively "Crye") moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss eight of the twelve counterclaims asserted by defendant Duro Textiles, LLC ("Duro"). Crye's motion became fully submitted on May 1 and is granted. Among other things, Duro has failed to plausibly plead that plaintiffs' patents are invalid or to plead with particularity that Crye engaged in inequitable conduct.

On April 24, Duro moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss two of the four causes of action asserted in Crye's Complaint. Duro's motion became fully submitted on May 15 and is granted in part. Crye's claim for unjust enrichment is barred by 28 U.S.C. § 1498(a). Crye's claim for breach of contract is not barred by Section 1498(a) to the extent that

Crye is pursuing a claim for damages as opposed to injunctive relief.

BACKGROUND

The following facts are drawn from the pleadings and the documents attached thereto. See Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005). For purposes of ruling on Duro's motion, those facts are construed in favor of Crye. See Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) ("Where, as here, the case is at the pleading stage and no evidentiary hearings have been held, . . . in reviewing the grant of a motion to dismiss under Rule 12(b)(1) we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." (citation omitted)). For purposes of ruling on Crye's motion, they are viewed in the light most favorable to Duro. See Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014) (noting that when deciding a motion to dismiss under Rule 12(b)(6), a court must "accept[] all factual allegations (but not legal conclusions) as true and draw[] all reasonable inferences in favor of the [nonmovant]").

I.   MULTICAM and Crye's Licensing

Over a decade ago, Crye developed a camouflage pattern known as MULTICAM for use on fabric. Crye claims proprietary rights in the color palette, shapes, and placement of shapes in

MULTICAM.  MULTICAM is the subject of at least one U.S. design patent, Design Patent No. D592,861 ("'861 Patent").[1]

Crye licenses printers to print and sell MULTICAM on fabric that is sold to companies that manufacture uniforms and other equipment in fulfillment of orders placed by or on behalf of the U.S. Department of Defense ("Government Sales").  Crye also licenses printers to print and sell MULTICAM on fabric that is sold to companies that manufacture uniforms and other equipment for commercial sale ("Commercial Sales").

In 2006, U.S. Army Special Operations units adopted MULTICAM.  In 2010, MULTICAM was selected as the standard issue camouflage pattern for all U.S. soldiers deployed to Afghanistan.

In 2008, Crye and Duro entered into a two-year license agreement.  This agreement granted Duro the exclusive right to

---

[1]    Additionally, the MultiCam® trademark is a registered trademark.  The design patent and registered trademark are owned by Lineweight, of which Crye Precision is the sister company, enjoying the exclusive right to sublicense the design patent and registered trademark.

According to Duro's counterclaim pleading, in addition to the '861 Patent, Lineweight is the purported owner and Crye is the purported exclusive licensee of U.S. Design Patent Nos. D487,848 ("'848 Patent"), D560,915 ("'915 Patent"), and D572,909 ("'909 Patent") (collectively, with the '861 Patent, "Crye Patents"), which are generally directed to camouflage patterns.

print and sell MULTICAM products in the United States in connection with both Government Sales and Commercial Sales.

In 2010, the U.S. Army insisted that Crye license additional printers to print MULTICAM for Government Sales. In response, Crye developed a network of printers, including Duro, which it appointed for two-year terms as non-exclusive licensees authorized to print and sell MULTICAM products in connection with Government Sales. Duro remained Crye's exclusive licensee for Commercial Sales.

## II. Crye's 2012 Agreement with Duro

Subsequently, in a 2012 agreement ("2012 Agreement"), Crye appointed Duro for another two-year term as a non-exclusive licensee authorized to print and sell MULTICAM products in connection with Government Sales. Duro retained exclusive rights with respect to Commercial Sales. Pursuant to Section 3(h) of the 2012 Agreement, Duro agreed not to "make any products that are similar to MULTICAM through color palette, pattern or arrangement or placement of any elements incorporated in MULTICAM." Pursuant to Section 7(c), Duro further agreed that it would not "at any time during or after this Agreement" commit "any act or assistance to any act, which may infringe or lead to the infringement of any of Crye's proprietary rights."

According to Section 14(g), Duro acknowledged that any breach of its obligations under the 2012 Agreement "with respect

to the proprietary rights or confidential information of Crye will cause Crye irreparable injury for which there are inadequate remedies at law, and therefore Crye will be entitled to equitable relief in addition to all other remedies provided by this Agreement or available at law."  And pursuant to Section 9(f), Duro's obligations under Sections 3, 7, and 14 (among others) "shall survive termination or expiration of this Agreement."

III. <u>Events After the Expiration of the 2012 Agreement</u>

In 2014, upon expiration of the 2012 license agreements with its various licensees, Crye entered into new non-exclusive license agreements with various printers.  Under the new agreements, Crye authorized its licensees to print and sell MULTICAM products in connection with both Government Sales and Commercial Sales (Duro no longer retained exclusive rights with respect to Commercial Sales).  Duro rejected the new license agreement.  After efforts to negotiate a new license agreement with Duro failed, Crye formally notified Duro that the 2012 Agreement had expired as of April 10, 2014.

Around May 2014, the U.S. Army announced its intention to switch the standard issue camouflage pattern from MULTICAM to a camouflage pattern known as Scorpion W2.  According to Crye, Scorpion W2 uses MULTICAM's color palette, shapes, and placement

of shapes, and its overall appearance is virtually indistinguishable from MULTICAM's.

Beginning in late 2014 or early 2015, Duro began printing and selling Scorpion W2 fabric for, and with the authorization and consent of, the U.S. Government. Because Scorpion W2 fabric is a product "similar to MULTICAM through color palette, pattern or arrangement or placement of any elements incorporated in MULTICAM," Crye alleges that Duro's printing and sale of Scorpion W2 fabric breaches Sections 3(h) and 7(c) of the 2012 Agreement.

IV. <u>Crye's Original Action</u>

Crye filed a complaint dated November 11, 2014 in this Court in case number 14cv9012 (DLC). That complaint was directed at Duro's printing and sale of MULTICAM fabric after the expiration of the 2012 Agreement and included claims for breach of contract, trademark infringement, and patent infringement. The patent infringement claim was directed exclusively to Duro's Commercial Sales of MULTICAM and explicitly excluded Duro's Government Sales.

According to Crye, having received assurances from Duro that it did not print any MULTICAM fabric after expiration of the 2012 Agreement and that any sales of MULTICAM fabric after expiration of that agreement were consistent with its rights upon termination of the agreement, on January 12, 2015, Crye

amended its complaint to eliminate claims related to the printing of MULTICAM fabric (except to recover unpaid license fees) and instead focused on Duro's sales of Scorpion W2 in alleged breach of Section 3(h) of the expired 2012 Agreement. According to Crye, because Crye's understanding was that Duro was printing and selling Scorpion W2 only for the U.S. Government, Crye elected not to include a claim for patent infringement in its amended complaint, presumably because Crye was aware that such a claim would be barred by 28 U.S.C. § 1498(a) ("Section 1498"), discussed below.

On January 29, 2015, Duro filed a motion to dismiss Crye's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Duro's motion was premised on the ground that pursuant to Section 1498, Crye's claims directed to Duro's manufacture and sale of Scorpion W2 products for the benefit of the Government could be brought only against the Government in the Court of Federal Claims. Duro also moved to dismiss on the ground that Crye had failed to plead sufficient facts to support its allegations of diversity jurisdiction.

As Crye advised in a February 5 letter, it appeared based on Duro's affidavit submitted in support of the motion to dismiss that there was not complete diversity of citizenship between the members of plaintiff and defendant limited liability

companies.  On February 17, Crye filed a notice of voluntary dismissal without prejudice.

V.    Crye's Current Action

Crye filed the instant Complaint, dated February 17, 2015, in New York state court.  Like the amended complaint in the original action, Crye's Complaint is directed primarily at Duro's printing and sale of Scorpion W2 fabric in alleged breach of Section 3(h) of the 2012 Agreement.  According to Crye, in light of Duro's representation in its motion to dismiss the original action that all of its sales of Scorpion W2 fabric were Government Sales, the Complaint does not include a claim for patent infringement.

Crye's Complaint pleads four causes of action.  The First and Fourth relate to Duro's sales of Scorpion W2 fabric.  Crye's First Cause of Action is for breach of contract and alleges that, since 2014, Duro has fulfilled or intends to fulfill orders of Scorpion W2 fabric for Government Sales, in violation of the 2012 Agreement, specifically Sections 3(h) and 7(c), the obligations of which survived the 2012 Agreement's expiration. Crye seeks injunctive relief pursuant to Section 14(g) of the 2012 Agreement.  Crye's Fourth Cause of Action is for unjust enrichment owing to Duro's sale of Scorpion W2 fabric without Crye's authorization, and requests restitution.

The Second and Third Causes of Action, both for breach of contract, relate to Duro's sales of MULTICAM. The Second Cause of Action alleges that Duro has not responded to Crye's request to inspect Duro's books and records, as provided for in the 2012 Agreement. And the Third Cause of Action alleges that Duro has not made payments on outstanding invoices in violation of a provision that accelerated all outstanding invoices on expiration of the 2012 Agreement. Crye's overall prayer for relief requests both an injunction and damages.

VI. Duro's Counterclaims

On January 19, 2015, Crye sent a letter to one of Duro's customers, Blind Industries and Service of Maryland ("BISM"). The BISM letter conveyed that Crye was aware that BISM had been purchasing fabric printed with the Scorpion W2 pattern from printers including Duro.[2] The letter alleged that the pattern is covered and protected by Crye's intellectual property, including Crye's patents, and that BISM's continued use and sale of the fabric constitutes a direct infringement under 35 U.S.C. § 271, which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes

_____

[2] The letter referred to an "Operation Camouflage Pattern," which, according to Duro, is the Scorpion W2 pattern.

the patent."  The letter demanded that BISM cease the use and sale of this fabric printed by Duro.

On February 27, 2015, Crye sent letters to two more Duro customers, American Apparel, Inc. ("American Apparel") and Propper International ("Propper"), containing the same notices, allegations, and demands as the BISM letter.  Crye does not have a contractual relationship with BISM, American Apparel, or Propper.

In response, when, on March 6, Duro filed in state court its Answer and Counterclaims to Crye's Complaint, Duro alleged that the Scorpion W2 pattern, printed on fabric by Duro and sold by Duro to customers like BISM, American Apparel, and Propper, does not infringe any valid claim of the Crye Patents.  Duro contends a controversy exists between Duro and Crye as to alleged infringement, validity, and enforceability of the Crye Patents that warrants the issuance of a declaratory judgment.

Duro's pleading contains twelve counterclaims.  The first four are for declaratory judgment of non-infringement of each of the four Crye Patents.  The Fifth through the Eighth Counterclaims are for declaratory judgment of invalidity of each of the four Crye Patents.  The Ninth Counterclaim seeks a declaratory judgment of unenforceability with respect to the '861 Patent.  And the Tenth through Twelfth Counterclaims are

state law claims for tortious interference with prospective advantage, unfair competition, and trade libel, respectively.

VII. <u>Removal</u>

On March 6, 2015, Duro removed this litigation to federal court pursuant to 28 U.S.C. § 1454, which provides that "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to the district court of the United States for the district and division embracing the place where the action is pending." Duro's notice of removal contends that this Court has jurisdiction over the action under 28 U.S.C. § 1338, which provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents." According to Duro, supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367.

Once removed, the case was accepted as related to Crye's dismissed, original action. Subsequently, Crye moved to dismiss Duro's Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Counterclaims for failure to state a claim upon which relief can be granted, and Duro moved to dismiss Crye's First and Fourth Causes of Action for lack of subject matter jurisdiction.

An April 10, 2015 Scheduling Order required Duro to provide the U.S. Government notice of its motion to dismiss for lack of subject matter jurisdiction, and afforded the Government an opportunity to be heard by allowing it to enter a submission by April 24. No such submission was made.

DISCUSSION

This Opinion first addresses Duro's motion. It then turns to Crye's.

## I. Subject Matter Jurisdiction over Crye's First and Fourth Causes of Action

Duro argues that Section 1498(a) divests this Court of subject matter jurisdiction over the First and Fourth Causes of Action in Crye's Complaint. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Mastafa v. Chevron Corp., 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted). Section 1498(a)'s potential application to Crye's First and Fourth Causes of Action are addressed in turn.

### A. Crye's First Cause of Action

Contrary to Duro's protestation, Section 1498(a) does not preclude Crye's First Cause of Action, which is not for patent

infringement, but for breach of contract.  Section 1498(a)

provides:

> Whenever an invention described in and covered by a
> patent of the United States is used or
> manufactured . . . for the United States without
> license of the owner thereof or lawful right to use or
> manufacture the same, the owner's remedy shall be by
> action against the United States in the United States
> Court of Federal Claims . . . .  For the purposes of
> this section, the use or manufacture of an invention
> described in and covered by a patent of the United
> States by a contractor, a subcontractor, or any
> person, firm, or corporation for the Government and
> with the authorization or consent of the Government,
> shall be construed as use or manufacture for the
> United States.

28 U.S.C. § 1498(a) (emphasis added).  By its terms, the statute

provides a process to remedy the unlicensed or otherwise

unlawful use or manufacture of a patented invention.  In other

words, it provides a process for bringing a patent infringement

claim.

Reading Section 1498(a) to apply to patent infringement

claims only is supported by the statute's implementing Federal

Acquisition Regulation ("FAR"), which provides:

> Pursuant to 28 U.S.C. [§] 1498, the exclusive remedy
> for patent . . . infringement by or on behalf of the
> Government is a suit for monetary damages against the
> Government in the Court of Federal Claims.  There is
> no injunctive relief available, and there is no direct
> cause of action against a contractor that is
> infringing a patent . . . with the authorization or
> consent of the Government (e.g., while performing a
> contract).

48 C.F.R. § 27.201-1(a) (emphasis added). The FAR goes on to say that the Government may authorize and consent to a contractor's use or manufacture of patented inventions by inserting in a government contract a clause that reads in part:

> The entire liability to the Government for
> infringement of a United States patent shall be
> determined solely by the provisions of the indemnity
> clause, if any, included in this contract . . . , and
> the Government assumes liability for all other
> infringement to the extent of the authorization and
> consent hereinabove granted.

Id. § 52.227-1(a) (emphasis added).

Relevant caselaw also supports reading Section 1498(a) as applying to patent infringement claims only. The Federal Circuit[3] has said that Section 1498(a) applies

> when (1) an invention claimed in a United States
> patent; (2) is used or manufactured by or for the
> United States, meaning each limitation is present in
> the accused product or process; and (3) the United
> States has no license or would be liable for direct
> infringement of the patent right for such use or
> manufacture if the United States was a private party.

Zoltek Corp. v. United States, 672 F.3d 1309, 1319 (Fed. Cir. 2012) (emphasis added) (citation omitted); see also W.L. Gore &

---

[3] The Federal Circuit has exclusive jurisdiction over appeals in "any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents," 28 U.S.C. § 1295(a)(1), and "[a] district court must . . . follow Federal Circuit precedent in a case arising under the patent laws," Foster v. Hallco Mfg. Co., 947 F.2d 469, 475 (Fed. Cir. 1991). See Rates Tech. Inc. v. Speakeasy, Inc., 685 F.3d 163, 174 n.9 (2d Cir. 2012).

Assocs. v. Garlock, Inc., 842 F.2d 1275, 1283 (Fed. Cir. 1988), abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391-94 (2006), as recognized in Zoltek, 672 F.3d at 1319 ("The government has graciously consented, in the [Section 1498(a)] statute, to be sued in the Claims Court[4] for reasonable and entire compensation, for what would be infringement if by a private person." (emphasis added)).

The history of Section 1498(a) further supports this reading. Congress enacted a precursor to Section 1498(a) in direct response to a Supreme Court ruling that patent infringement was a tort for which the Government had not waived sovereign immunity. See Zoltek, 672 F.3d at 1315. Congress later amended the section to shield from liability government contractors in order "to stimulate contractors to furnish what was needed . . . without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents." Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 345 (1928) (emphasis added). "To accomplish this governmental purpose, Congress exercised the power to take away

---

[4] "Congress changed the title of the Claims Court and it is now the United States Court of Federal Claims." Hercules Inc. v. United States, 516 U.S. 417, 423 n.5 (1996).

the right of the owner of the patent to recover from the

contractor for _infringements_." _Id._ (emphasis added).[5]

Despite Duro's characterization, Crye's First Cause of

Action is not a claim for patent infringement against the

Government masquerading as a contract claim. In a related

context, the Second Circuit has advised that if a plaintiff's

rights depend on, for example, state contract law, "the fact

that a patent . . . is incidentally involved" does not transform

the case into a patent infringement action. _See_ _Wells v._

_Universal Pictures Co.,_ 166 F.2d 690, 691 (2d Cir. 1948)

(declining to find federal "arising under" jurisdiction); _see_

_also_ _RX Data Corp. v. Dep't of Soc. Servs.,_ 684 F.2d 192, 196

(2d Cir. 1982) ("[E]ven an infringement claim will not invoke

---

[5] Against this reading of the statute, Duro cites _Robishaw Eng'g Inc. v. United States,_ where a District Court in Virginia stated that, "[i]n ascertaining which actions are implicitly barred by § 1498, courts must carefully distinguish cases in which the government's use of patents and its possession of patent licenses are merely incidental issues, from cases in which such issues are the gravamen of the action." 891 F. Supp. 1134, 1144 (E.D. Va. 1995). _Robishaw_ was an Administrative Procedure Act action against the Government seeking a declaratory judgment that the U.S. Army's position in negotiations for a license under the plaintiff's patents was "arbitrary, capricious, an abuse of discretion, and contrary to law." _Id._ at 1138-39. The court granted the Government's motion to dismiss, reasoning that, "[b]ecause neither the APA nor § 1498 waives the government's sovereign immunity so as to permit Robishaw's suit, there is no jurisdiction to entertain the claim." _Id._ at 1147. On its face this reasoning does not block Crye's state law claims against a non-governmental party for a purported breach of a contractual duty.

federal jurisdiction when the claim is merely incidental to a primary dispute . . . under state law."). And according to the Federal Circuit, "that patent issues are relevant to resolution of a contract dispute cannot possibly convert a suit for breach of contract into one arising under the patent laws." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1579 (Fed. Cir. 1993) (citation omitted); see also Wawrzynski v. H.J. Heinz Co., 728 F.3d 1374, 1380 (Fed. Cir. 2013) ("Despite [defendant]'s strenuous efforts to construe the complaint to favor its theory of the case, and despite the fact that the patent is referenced in the complaint, a close review of [plaintiff]'s complaint, including its counts and requested relief, confirms that [plaintiff] did not intend to assert his patent against [defendant].").

Crye may well wish to pursue its rights against the Government under the patent laws, but it has not done so in its First Cause of Action. Crye's First Cause of Action against Duro alleges breach of contract. Separate and apart from any duties that Duro may have under the patent laws, under the 2012 Agreement Duro voluntarily incurred an independent obligation to Crye by contracting not to "make any products that are similar

to MULTICAM through color palette, pattern or arrangement or placement of any elements incorporated in MULTICAM."[6]

But characterizing Crye's First Cause of Action as a breach of contract claim beyond the reach of Section 1498(a) is possible only to the extent that this claim seeks damages, as opposed to an injunction for breach of patent rights.  Section 14(g) of the 2012 Agreement, while it contemplates equitable relief, explicitly limits itself to breaches of obligations "with respect to the proprietary rights" of Crye.[7]  Seeking an injunction under Section 14(g), in other words, presupposes an infringement of Crye's patent rights, and transforms what could otherwise be a pure contract claim into one for patent infringement, which would bring the First Cause of Action within Section 1498(a)'s ambit.  Although the body of the Complaint's First Cause of Action appears dedicated exclusively to obtaining as its remedy an injunction, the Complaint's prayer for relief seeks "[d]amages, including lost profits, from Duro's sales of Scorpion W2 fabric and/or Products."  Hence, Crye's Complaint is

---

[6] This observation is not intended as a ruling regarding the extent to which Duro's contractual obligations survived the expiration of the 2012 Agreement.

[7] Although Crye describes its proprietary rights as including trademark rights, Crye does not claim that Duro has infringed its trademark.

construed as seeking contract damages under the First Cause of Action, and to that extent the motion to dismiss is denied.

According to Duro, if Section 1498(a) does not apply in cases like this one, plaintiffs can bypass its strictures by simply omitting from their complaints claims for patent infringement and instead bringing actions that sound in contract. This argument is question begging; it has force only if one accepts the premise (rejected above), that Section 1498(a) is meant to apply outside the context of patent infringement claims.

B.   Crye's Fourth Cause of Action

Although Crye's First Cause of Action, for breach of contract, is not barred by Section 1498(a), that section does block Crye's Fourth Cause of Action, for unjust enrichment. This is not a quintessential unjust enrichment claim "whe[re] the defendant receive[d] requested goods or services without paying any compensation therefor." S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co., 608 F.2d 28, 37 (2d Cir. 1979). In this case, if Duro's enrichment from the sale of Scorpion W2 fabric is "unjust," it is because that enrichment infringed one of Crye's rights, and such a right could derive only from the contract -- in which case the unjust enrichment claim cannot stand, see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., 448 F.3d 573, 586-87

(2d Cir. 2006) (noting unjust enrichment claim can lie only in
<u>absence</u> of express agreement) -- or from the patent laws -- in
which case the unjust enrichment claim is really a patent
infringement claim, which, as discussed above, is subject to
Section 1498(a).  Indeed, if an unjust enrichment claim like
Crye's were permitted to survive a Section 1498(a) challenge,
plaintiffs bringing patent infringement claims could simply
style them as claims for unjust enrichment to avoid the statute.
Accordingly, Duro's motion to dismiss Crye's Fourth Cause of
Action is granted.[8]

C.  <u>Subject Matter Jurisdiction over Other Claims</u>

Of course, separate and apart from any motions made by the
parties, this Court has an independent duty to ensure that it
has subject matter jurisdiction over the action.  <u>See</u> <u>In re Indu</u>
<u>Craft, Inc.</u>, 749 F.3d 107, 111 (2d Cir. 2014).  The statute

---

[8] The parties dispute both whether Section 1498(a) represents a
jurisdictional bar or an affirmative defense and whether that
question is governed by Second Circuit or Federal Circuit law.
Anticipating a ruling that Section 1498(a) provides an
affirmative defense rather than a jurisdictional blockade, Duro
argues in the alternative that it is entitled to summary
judgment on that properly pled affirmative defense.  The Court
need not resolve these disputes.  With respect to Crye's First
Cause of Action, Section 1498(a) may not apply.  If Section
1498(a) sets a jurisdictional bar, this Court lacks subject
matter jurisdiction over Crye's Fourth Cause of Action.  If,
alternatively, the statute provides an affirmative defense, Duro
is entitled to summary judgment on it.  The result is the same
either way: Crye's Fourth Cause of Action is dismissed from the
case.

under which Duro removed this action provides that "the district court shall remand all claims that are . . . no[t] within the original or supplemental jurisdiction of the district court." 28 U.S.C. § 1454(d)(1).

Duro's patent law counterclaims are within this Court's original jurisdiction.  See 28 U.S.C. § 1338(a).  Supplemental jurisdiction exists "over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), in other words, they "derive from a common nucleus of operative fact."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted).  "In determining whether two disputes arise from a common nucleus of operative fact, [courts] have traditionally asked whether the facts underlying the federal and state claims substantially overlap[] . . . ."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (citation omitted).

Here, the facts underlying Duro's patent law counterclaims do indeed substantially overlap with the facts underlying Crye's First Cause of Action, for breach of contract.  Among other things, Duro's patent law counterclaims and Crye's First Cause of Action call for analysis of the similarity vel non of MULTICAM and Scorpion W2.

The parties have not yet addressed whether the Court has subject matter jurisdiction over other claims in this action. Accordingly, by June 24, 2015, Crye and Duro shall each submit a two-page letter addressing whether Crye's Second and Third Causes of Action should be remanded to state court under 28 U.S.C. § 1454(d)(1) for lack of supplemental jurisdiction.

II. Duro's Counterclaims

Crye moves to dismiss Duro's counterclaims seeking declaratory judgment of invalidity of the Crye Patents; its counterclaim seeking a declaratory judgment of unenforceability with respect to the '861 Patent; and its state law counterclaims. These three categories are addressed in turn.

A. Counterclaims for Declaratory Judgment of Invalidity

"A motion to dismiss counterclaims under Rule 12(b)(6) is decided under the same standard applied to a motion to dismiss the claims of a complaint." Raine v. Paramount Pictures Corp., No. 97cv3553 (DLC), 1998 WL 655545, at *5 (S.D.N.Y. Sept. 24, 1998). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler, 751 F.3d at 68 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Parkcentral Global Hub Ltd. v. Porsche

Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted).  This now-well-rehearsed plausibility pleading standard derives from the Supreme Court's decisions in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  See E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 253-54 (2d Cir. 2014).

Duro's counterclaims seeking declaratory judgment of invalidity of Crye's Patents can be dismissed with reference to the pleading standard alone, as they allege without more that each of Crye's Patents is "invalid for failure to satisfy one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, 112 and/or 171," and that "on information and belief, Crye contends that [its] Patent is valid."  These conclusory allegations of invalidity are unsupported by any factual allegations.  Although Duro refers to, for example, 35 U.S.C. §§ 102-03, which set forth the "novelty" and "non-obvious subject matter" conditions for patentability, Duro does not identify any prior art that anticipates or renders obvious Crye's Patents.  In short, Duro's pleading does not "assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible."  Port Auth. of N.Y. & N.J., 768 F.3d at 254 (citation omitted).

Duro argues that the plausibility pleading standard should not apply to its patent invalidity counterclaims. This argument is rejected for the reasons set forth by the Honorable Paul A. Engelmayer in Orientview Techs. LLC v. Seven For All Mankind, LLC, No. 13cv538 (PAE), 2013 WL 4016302, at *5-7 (S.D.N.Y. Aug. 7, 2013). There, the counterclaimant had argued, as does Duro, that holding invalidity counterclaims to the Twombly/Iqbal plausibility standard would be inconsistent with the Local Patent Rules, which create a process for disclosing the specifics of the invalidity claim. See S.D.N.Y. Local Patent Rules 7-8, available at http://www.nysd.uscourts.gov/rules/rules.pdf. As Judge Engelmayer explained, "[a]lthough some superfluity may result, the Local Patent Rules and the [Twombly/Iqbal] pleading standard are not inconsistent. And in the absence of any directive that claims of invalidity . . . should be measured under a different standard than almost all other claims in this Circuit are, the Court declines to do so." Id. at *6; see also Regeneron Pharm., Inc. v. Merus B.V., No. 14cv1650 (KBF), 2014 WL 2795461, at *2 (S.D.N.Y. June 19, 2014) ("This Court has found no basis in Second Circuit precedent to treat patent cases differently from other cases . . . to which Twombly applies.").

Duro also argues that its counterclaims for declaratory judgment of invalidity should be treated as affirmative defenses

25

and thus not held to the <u>Twombly</u>/<u>Iqbal</u> standard. This argument
runs directly counter to the Federal Circuit's teaching in
<u>Multiform Desiccants, Inc. v. Medzam, Ltd.</u>, which noted that
"[t]he Supreme Court in <u>Cardinal Chem. Co. v. Morton Int'l,</u>
<u>Inc.</u>, 508 U.S. 83 (1993) drew a dispositive distinction between
an affirmative defense and a counterclaim for a declaratory
judgment." 133 F.3d 1473, 1481 (Fed. Cir. 1998). Duro had the
opportunity to raise invalidity as a defense but chose to assert
it as a counterclaim for declaratory judgment. Accordingly, it
will be held to the pleading standard governing counterclaims.

> B. <u>Counterclaim for Declaratory Judgment of</u>
> <u>Unenforceability</u>

Duro seeks a declaratory judgment of unenforceability of
the '861 Patent due to alleged inequitable conduct committed
during its prosecution. "[W]hether inequitable conduct has been
adequately pleaded is a question of Federal Circuit law because
it pertains to or is unique to patent law. . . . Inequitable
conduct . . . must be pled with particularity under Rule 9(b)."
<u>Exergen Corp. v. Wal-Mart Stores</u>, 575 F.3d 1312, 1326 (Fed. Cir.
2009) (citation omitted). As the Federal Circuit has held:

> [T]o plead the "circumstances" of inequitable conduct
> with the requisite "particularity" under Rule 9(b),
> the pleading must identify the specific who, what,
> when, where, and how of the material misrepresentation
> or omission committed before the PTO.[9]  Moreover,

---

[9] The PTO, or USPTO, refers to the United States Patent and
Trademark Office. <u>See</u> <u>Otokoyama Co. v. Wine of Japan Imp.,</u>

although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

Id. at 1328-29.  With respect to identifying the specific "how" of a material omission,

identify[ing] the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record . . . [is] necessary to explain both "why" the withheld information is material and not cumulative, and "how" an examiner would have used this information in assessing the patentability of the claims.

Id. at 1329-30.

According to Duro's counterclaim, the named inventors, in order to obtain the patent, intentionally deceived the USPTO by failing to disclose information related to the functional aspects of the subject of the patent, because "a design visible in its ultimate end use that is primarily functional is not patentable" as a design patent under 35 U.S.C. § 171.  Duro alleges that the inventors intentionally withheld, for example, the fact that the MULTICAM pattern was developed to effectively limit the visual signature of a person operating across a very wide range of physical environments and seasons.

_____

Inc., 175 F.3d 266, 269 (2d Cir. 1999).

Duro's pleading fails, however, to explain why the allegedly withheld information is not cumulative. The PTO had in its possession the title of the '861 Patent -- Substrate with Camouflage Pattern -- and the only claim for the patent states, "The ornamental design for a camouflage pattern applied to substrate, as shown and described." It is the very essence of camouflage "to effectively limit the visual signature" of that which it shrouds. See Webster's II New Riverside University Dictionary 222 (1994) (defining camouflage as "concealment of personnel or material," "a means of concealment"). The information allegedly withheld -- that MULTICAM is camouflage -- is cumulative of information that the PTO examiner already had. And, in fact, the examiner for the '861 Patent cited as prior art references at least three issued design patents, held by unrelated third parties, in camouflage patterns. In the absence of an explanation "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims," Exergen, 575 F.3d at 1329-30, Duro's counterclaim based on inequitable conduct must be dismissed.

C.    State Law Counterclaims

Duro's Tenth, Eleventh, and Twelfth Counterclaims assert state law claims for tortious interference with prospective business advantage, unfair competition, and trade libel,

respectively.  The basis for these three claims is Crye's

transmission of the letters to Duro's customers.

The Federal Circuit has explained that

[f]ederal patent law . . . preempts state-law tort
liability when a patentee in good faith communicates
allegations of infringement of its patent.  As a
result, bad faith must be alleged and ultimately
proven, even if bad faith is not otherwise an element
of the tort claim.

     Bad faith includes separate objective and
subjective components. . . .  [T]he bad faith
standard . . . cannot be satisfied in the absence of a
showing that the claims asserted were objectively
baseless.  To be objectively baseless, the
infringement allegations must be such that no
reasonable litigant could reasonably expect success on
the merits.

Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254,

1260 (Fed. Cir. 2008) (citation omitted).[10]

It is difficult to find bad faith adequately pleaded.  By

itself, Crye's transmission of the letters to Duro's customers

does not constitute an act taken in bad faith in light of the

---

[10] Duro sees inconsistency in Crye's invocation of patent law to
preempt Duro's state law counterclaims and Crye's own assertion
of state law contract claims in its Complaint.  There is no
inconsistency, however.  By contracting with Crye, Duro both
exposed itself to duties separate and apart from those that it
may owe under the patent laws and entitled Crye to sue for the
breach of those duties.  By contrast, no contract governs the
relationship between Crye and Duro's customers, such as the
three to which Crye sent infringement notices.  Crye undertook
no special obligations with respect to these entities, and its
actions in sending them infringement notices are explicitly
sanctioned by the patent laws, as explained below.

Federal Circuit's holding in <u>Virginia Panel Corp. v. MAC Panel</u> <u>Co.</u>:

> A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers. . . . That applies even to warning a company . . . , that, at least in its role as a supplier to the United States, could not be subject to liability or enjoined from practicing the claimed invention.
>
> While section 1498 clearly restricts a patentee's remedies against government contractors' infringing acts, it does not make those acts non-infringing and it certainly does not prohibit the sending of infringement notices to government contractors. . . .
>
> Moreover, . . . the Federal Acquisition Regulations (FAR) explicitly contemplate that patentees will send infringement notices directly to contractors.

133 F.3d 860, 869-70 (Fed. Cir. 1997) (citation omitted).

Duro attempts to distinguish <u>Virginia Panel</u> on the ground that, there, the plaintiff had a basis for believing that the recipients of the notices of infringement could be subject to patent law liability for their actions. Here, however, as Crye's letters complain only about Government Sales that would be covered by Section 1498, Crye has no basis to believe that it could actually bring an infringement action against the recipients of the letters. But, as reflected in the passage quoted above, <u>Virginia Panel</u> explicitly blessed the transmission of infringement notices even where Section 1498 would block a direct infringement action against the recipient.

Virginia Panel aside, Duro contends to have sufficiently pled bad faith by alleging that Crye's letters to American Apparel and Propper International "misleadingly stated that Crye had recently filed a lawsuit against Duro in the Federal Courts of New York based on Duro's printing of . . . Scorpion W2, without informing American Apparel and Propper International that Crye had voluntarily dismissed the referenced federal court action ten days before the date of the letter." But this allegation does not represent "bad faith" of the type envisioned in Dominant Semiconductors: infringement allegations so objectively baseless that no "reasonable litigant could reasonably expect success on the merits." 524 F.3d at 1260 (citation omitted).

In its opposition to Crye's motion to dismiss, Duro purports to find bad faith in aspects of Crye's infringement notices that Duro did not point to in its counterclaim pleading. But "a party is not entitled to amend its [pleading] through statements made in motion papers . . . ." Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (citation omitted).

Nor are Duro's tardy allegations of bad faith persuasive. First, Duro notes that each infringement notice includes an exhibit that lists Crye's intellectual property covering Scorpion W2 as including not only the four issued design patents, but also trademarks, and registration and application

numbers from the Copyright Office.  According to Duro, the notices misleadingly suggest to the recipient that their sales of Scorpion W2 infringe all of these assets.  But despite what is included in the exhibit to the notices, the notices themselves allege infringement of the patents only.

Second, Duro contends that Crye cannot in good faith allege that Scorpion W2 infringes the MULTICAM design patent because the Scorpion W2 pattern appears to be nearly identical to an original Scorpion pattern, which itself was prior art to the MULTICAM pattern.  But "there is no 'practicing the prior art' defense to literal infringement," Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1365 (Fed. Cir. 2002), so the closeness of Scorpion W2 to any prior art, even had it been properly pled, would not imply the bad faith necessary for Duro's state law counterclaims to avoid dismissal.[11]  The question of obviousness goes to the validity of a patent, not to the issue of infringement.  Id. at 1366.

CONCLUSION

Crye's April 3 motion is granted.  Duro's April 24 motion is granted in part:  Crye's Fourth Cause of Action, for unjust

---

[11] Because Duro's state law counterclaims, including its Eleventh Counterclaim, for unfair competition, are preempted and fail to allege the requisite bad faith, there is no need to address Crye's independent argument that Duro's pleading fails to state a claim for unfair competition under New York law.

enrichment, is dismissed. Duro's First through Fourth Counterclaims, seeking declaratory judgment of non-infringement, remain, so the Court continues to have jurisdiction over the action, as discussed above.

If either side desires to amend its pleadings pursuant to Fed. R. Civ. P. 15(a)(2), it must do so by June 24. No further opportunity to amend will be granted. And, as noted above, by June 24, Crye and Duro shall each submit a two-page letter addressing whether Crye's Second and Third Causes of Action should be remanded for lack of supplemental jurisdiction.

SO ORDERED:

Dated:   New York, New York
         June 16, 2015

_____
DENISE COTE
United States District Judge