```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
CRYE PRECISION LLC and LINEWEIGHT        :
LLC,                                     :
                                         :
                        Plaintiffs,      :     15cv1681 (DLC)
                                         :
             -v-                         :     OPINION & ORDER
                                         :
DURO TEXTILES, LLC,                      :
                                         :
                        Defendant.       :
                                         :
---------------------------------------- X
```

APPEARANCES

For plaintiffs:

Robert A. Horowitz
Lauren B. Grassotti
Justin A. MacLean
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166

For defendant:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190

Erin M. Estevez
COOLEY LLP
1299 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004

Celia Goldwag Barenholtz
COOLEY LLP
1114 Avenue of the Americas
New York, NY 10036

DENISE COTE, District Judge:

This action arises from a continuing dispute between the licensor and owner of a patented camouflage pattern, plaintiffs Crye Precision LLC ("Crye Precision") and Lineweight LLC ("Lineweight") (collectively "Crye"), and a former licensee, defendant Duro Textiles, LLC ("Duro"). On July 23, 2015, Crye moved to dismiss all twelve counterclaims asserted by Duro pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6). For the reasons that follow, Crye's motion is granted.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case. See Crye Precision LLC v. Duro Textiles LLC, --- F. Supp. 3d ---, 2015 WL 3751658, at *1-*5 (S.D.N.Y. June 16, 2015) ("June 2015 Opinion"). In the June 2015 Opinion, this Court granted in part cross motions to dismiss. Id. at *13. Specifically, the June 2015 Opinion dismissed Crye's unjust enrichment claim and its breach of contract claim insofar as it sought injunctive relief. Id. at *5-*9. The Opinion also dismissed Duro's counterclaims seeking declaratory judgment of invalidity of Crye's patents, its counterclaim seeking a declaratory judgment of unenforceability with respect to U.S. Design Patent No. D592,861 (the "'861 Patent"), and its state law counterclaims. Id. at *9-*13. The

parties were granted leave to serve amended pleadings.  Id. at *13.

Crye filed the current Amended Complaint on June 25.  The Amended Complaint includes its original breach of contract action, this time seeking only money damages for Duro's breach of the non-compete provision of its 2012 license agreement with Crye, as well as two additional causes of action for trade dress infringement and unfair competition.[1]

On July 9, Duro filed its Answer and Counterclaims to the Amended Complaint containing the same twelve counterclaims as its prior pleading.  The first four are for declaratory judgment of non-infringement of four patents held by Crye.  The Fifth through the Eighth Counterclaims are for declaratory judgment of invalidity of each of those four patents.  The Ninth Counterclaim seeks a declaratory judgment of unenforceability with respect to the '861 Patent.  The Tenth through Twelfth Counterclaims are state law claims for tortious interference with prospective advantage, unfair competition, and trade libel.

The following facts are asserted in Duro's counterclaims and taken from documents integral to those claims unless otherwise noted.  For purposes of ruling on Crye's motion, the

---

[1] Crye's two breach of contract claims unrelated to the camouflage pattern known as Scorpion W2 (the Fourth and Fifth Claims for Relief in the Amended Complaint) were remanded to state court on June 29, 2015.

facts are viewed in the light most favorable to Duro.  See Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015).

Plaintiff Lineweight is the purported owner and Crye is the purported exclusive licensee of four patents ("Crye Patents"). The Crye Patents are generally directed to camouflage patterns, and Crye claims proprietary rights in the color palette, shapes, and placement of shapes in a camouflage pattern known as MULTICAM.

On January 19, 2015, Crye sent a letter to one of Duro's customers, Blind Industries and Service of Maryland ("BISM"). The BISM letter conveyed that Crye was aware that BISM had been purchasing fabric printed with the Scorpion W2 pattern from printers including Duro.[2]  Scorpion W2 is a camouflage pattern that Duro manufactures for and sells to the U.S. Government. The letter alleged that the pattern is covered and protected by Crye's intellectual property, including the Crye Patents, and that BISM's continued use and sale of the fabric constitutes a direct infringement under 35 U.S.C. § 271, which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent."  The letter demanded that BISM cease the use and sale of this fabric printed

---

[2] The letter referred to an "Operation Camouflage Pattern," which, according to Duro, is the Scorpion W2 pattern.

by Duro.  On February 27, Crye sent letters to two more Duro customers, American Apparel, Inc. ("American Apparel") and Propper International ("Propper"), containing the same notices, allegations, and demands as the BISM letter.

On April 22, Crye provided Duro with a covenant not to sue Duro or its customers for infringement of the Crye Patents "to the extent Duro and its customers manufacture and sell Scorpion W2 for the U.S. government . . . with the authorization or consent of the U.S. government" (the "Covenant").  The Covenant reserves Crye's right to "maintain any claim, including but not limited to a claim for patent or copyright infringement, against Duro or its customers based on their manufacturer and/or sale of Scorpion W2 . . . other than for the U.S. government . . . ."  On May 6, Duro responded by letter that the Covenant falls short of the standard set forth in Already, LLC v. Nike, Inc., 133 S. Ct. 721, 727 (2013).  Specifically, Duro pleads that the Covenant does not apply to commercial sales by Duro and its customers of Scorpion W2 fabrics, does not state that it is irrevocable and unconditional, does not apply to all claims or demands, and does not cover close variations or colorable imitations of Scorpion W2.  Duro thus contends that there is a substantial actual and justiciable controversy between Duro and Crye as to the alleged infringement, validity, and

enforceability of the Crye Patents that warrants the issuance of a declaratory judgment.

## DISCUSSION

Crye moves to dismiss Duro's counterclaims seeking a declaratory judgment of invalidity, unenforceability, and non-infringement of the Crye Patents as moot pursuant to Rule 12(b)(1); and to dismiss its state law counterclaims of tortious interference, unfair competition, and trade libel as inadequately pled pursuant to Rule 12(b)(6).  These two sets of counterclaims are addressed in turn.

**I. Declaratory Judgment Counterclaims**

Crye first moves to dismiss all of Duro's declaratory judgment counterclaims pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that they are rendered moot by the Covenant.  The mootness doctrine is derived from "Article III of the Constitution," which "grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'  In our system of government, courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." Already, LLC, 133 S. Ct. at 726 (citation omitted). Resolution of that question in the context of a declaratory judgment claim "depends upon the existence of a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." Dow Jones & Co., Inc. v. Ablaise Ltd., 606 F.3d 1338, 1345 (Fed. Cir. 2010) (citation omitted); see also Nike, Inc. v. Already, LLC, 663 F.3d 89, 95 (2d Cir. 2011).

"[A] court may not adjudicate a difference or dispute of a hypothetical or abstract character or one that is academic or moot." Matthews Int'l Corp. v. Biosafe Eng'g LLC, 695 F.3d 1322, 1328 (Fed. Cir. 2012) (citation omitted); see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 105 (2d Cir. 2013). Rather, a justiciable controversy exists "only where a dispute is definite and concrete, touching the legal relations of parties having adverse legal interests, and will admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Matthews Int'l Corp., 695 F.3d at 1328 (quoting MedImmune, Inc. v. Genentech, Inc, 549 U.S. 118, 127 (2007)). In evaluating whether a justiciable controversy exists, the "totality of the circumstances" must be considered. Nike, Inc., 663 F.3d at 95; see also Sandoz Inc. v. Amgen Inc., 773 F.3d 1274, 1277 (Fed. Cir. 2014).

The voluntary cessation exception to the mootness doctrine recognizes that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, LLC,

7

133 S. Ct. at 727. As such, a party "claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. (citation omitted); see also Holland v. Good, 758 F.3d 215, 223-24 (2d Cir. 2014).

Based on the facts alleged in Duro's counterclaims and the terms of the Covenant, Duro's declaratory judgment counterclaims are now moot. The Covenant reads as follows:

> Consistent with 28 U.S.C. § 1498, Crye Precision LLC and Lineweight LLC (collectively, "Crye") hereby covenant not to sue Duro Textiles, LLC ("Duro") or its customers for infringement of U.S. Design Patent Nos. D487,848, D592,861, D560,915, or D572,909 ("Crye Patents") to the extent Duro and its customers manufacture and sell Scorpion W2 for the U.S. government (including a contractor or subcontractor to the U.S. government) with the authorization or consent of the U.S. government.

Duro alleges in its pleading that "[a]ll of Duro's sales of Scorpion W2 are for the government, under the authorization and consent of the government." As such, the Covenant, by including the manufacture and sale of Scorpion W2 "for the U.S. government," expressly covers Duro's (and its customers') past and current sales. The plain language ensures that any enforcement by Crye against Duro's Government sales, such as the letters sent to Duro's customers, will not recur. See Already, LLC, 133 S. Ct. at 727.

In its pleading, Duro asserts that the Covenant is inadequate to bar Duro's counterclaims since the Covenant does not apply to commercial sales by Duro and its customers of Scorpion W2 fabrics, does not state that it is irrevocable and unconditional, does not apply to all claims or demands, and does not cover close variations or colorable imitations of Scorpion W2. In its motion papers, Crye amended the Covenant to (1) be irrevocable and unconditional; (2) include colorable imitations or close variations of Scorpion W2; and (3) apply to all claims or demands for patent infringement. Duro acknowledges that these amendments to the Covenant leave "only the failure to cover commercial sales at issue."

Duro argues that because the Covenant does not cover commercial sales of Scorpion W2 fabric, and because Duro plans to sell Scorpion W2 commercially in the future, the Covenant is too narrow to render the counterclaims moot. This argument is unpersuasive. Given that the Covenant encompasses all of Duro's current conduct, it is incumbent on Duro "to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant" to avoid a finding of mootness. Already, LLC, 133 S. Ct. at 728. Duro, however, admits that commercial sales cannot commence without permission from the Government and that the Government has not yet authorized printers to sell Scorpion W2 to the commercial

9

market.  See Organic Seed Growers & Trade Ass'n v. Monsanto Co., 718 F.3d 1350, 1359 (Fed. Cir. 2013) (finding no justiciable controversy where the declaratory judgment plaintiffs did not allege that they were engaged in activities outside the scope of defendant's disclaimer not to sue).

Duro argues that it has "sufficiently concrete plans" to sell Scorpion W2 commercially.  Specifically, Duro points to its history selling MULTICAM to the commercial market, claims that the Government "has indicated it will allow the printers" to sell Scorpion W2 commercially "once its needs are met," and states that it is "awaiting only the government's permission to begin those sales."  Even if it were appropriate to consider these representations of counsel, see Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence."), it remains unclear when the Government might authorize Duro to sell Scorpion W2 commercially, and until it does Duro is not exposed to any patent infringement claims from Crye.[3]  As such, until the Government provides Duro with authorization to sell Scorpion W2

---

[3] Duro relies on two cases to show that a covenant failing to cover future sales does not divest a court of jurisdiction.  See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1299 (Fed. Cir. 2009); ICOS Vision Sys. Corp. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 670 (S.D.N.Y. 2010).  These cases, however, involved already existing products that could be sold freely.  In contrast, Duro is barred from engaging in commercial sales of Scorpion W2 without Government authorization.

commercially, any declaratory judgment ruling on the Crye Patents would be an "opinion advising what the law would be upon a hypothetical state of facts." Matthews Int'l Corp., 695 F.3d at 1328; see also Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1345-49 (Fed. Cir. 2007) (holding that the possibility of future activity that would be subject to a patent infringement claim was too uncertain to create a justiciable controversy).

Accordingly, Crye's declaratory judgment counterclaims are dismissed. If the Government authorizes Duro to sell Scorpion W2 commercially, and circumstances warrant, Duro may refile these counterclaims.

## II. State Law Counterclaims

Duro's Tenth, Eleventh, and Twelfth Counterclaims assert state law claims for tortious interference with prospective business advantage, unfair competition, and trade libel. Crye moves to dismiss Duro's three state law counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, Crye argues that Duro has not adequately alleged bad faith for all three counterclaims, and that Duro has failed to state a claim for unfair competition and trade libel.

"A motion to dismiss counterclaims under Rule 12(b)(6) is decided under the same standard applied to a motion to dismiss the claims of a complaint." Crye Precision LLC, 2015 WL

3751658, at *9.  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 68 (2d Cir. 2014).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted).

As in its previous pleading, the basis for Duro's three state law claims is Crye's transmission of the letters to Duro's customers.  The Federal Circuit has explained that

> [f]ederal patent law . . . preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent.  As a result, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim.
>
> Bad faith includes separate objective and subjective components. . . .  [T]he bad faith standard . . . cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless.  To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits.

Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citation omitted).

As was true for the state law claims at issue in the June 2015 Opinion, bad faith is not adequately pled here.  The June

12

2015 Opinion explained that various suggestions of bad faith proffered by Duro did not constitute bad faith under the governing case law, and that analysis is incorporated here. Crye Precisions LLC, 2015 WL 3751658, at *12-*13.

Duro adds in its current pleading that the infringement letters were in bad faith because "three of the four listed patents . . . include vertically oriented lines or elements that are entirely missing from the OCP/Scorpion W2 pattern -- no reasonable litigant could reasonably expect to succeed on patent infringement claims based on any of these three patents."  A design patent is infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."  Apple Inc. v. Samsung Electronics Co., 786 F.3d 983, 999 (Fed. Cir. 2015) (citation omitted).  Here, the patterns are not so dissimilar that no reasonable litigant could expect to succeed on a patent infringement claim.

Duro, moreover, has not adequately alleged subjective bad faith.  "[S]ubjective bad faith only requires proof that the lack of objective foundation for the claim was either known or so obvious that it should have been known by the party asserting the claim."  Kilopass Tech., Inc. v. Sidense Corp., 738 F.3d

13

1302, 1310 (Fed. Cir. 2013) (citation omitted). Duro's counterclaims do not state that Crye knew or should have obviously known that its claims lacked an objective foundation.

Finally, Duro alleges bad faith because Crye omitted from its enforcement letters that, for the Crye "'848 Patent, the U.S. Government has a fully paid-up license that flows to its contractors." Duro does not explain in its opposition to this motion how this cryptic allegation reflects an omission of material importance or otherwise suggests Crye's bad faith. Without further information, this allegation does not demonstrate that no reasonable litigant could reasonably expect Crye to succeed on the merits of the claims in its enforcement letters, or that Crye knew or should have obviously known that its claims had no objective foundation.[4]

---

[4] Because Duro's state law counterclaims, including its Eleventh Counterclaim, for unfair competition, are preempted and fail to allege the requisite bad faith, there is no need to address Crye's independent arguments that Duro's pleading fails to state a claim for unfair competition and trade libel under New York law.

## CONCLUSION

Crye's July 23, 2015 motion is granted.  Duro's declaratory judgment claims are denied without prejudice and its state law counterclaims are dismissed with prejudice.

SO ORDERED:

Dated:   New York, New York
         October 28, 2015

_____
DENISE COTE
United States District Judge